## UNITED STATES v. BUDAR et al.

## SAME v. GEROLD et al.

(District Court, E. D. Wisconsin. October 22, 1925.)

1. Intoxicating liquors ⟝260—Roadhouse, where intoxicating liquor consumed, held "nuisance," notwithstanding owners did not own, sell, or barter liquor.

Roadhouse, where intoxicating liquor was consumed by patrons with owners' express consent and to their pecuniary profit, was a "nuisance," within National Prohibition Act, tit. 2, §§ 21, 22 (Comp. St. Ann. Supp. 1923, §§ 10138½jj, 10138½k), in view of section 3 (Comp. St. Ann. Supp. 1923, § 10138½aa), regardless of whether owners owned, sold, or bartered such liquor; "kept" not requiring personal custodianship or dominion by owners.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Keep; Nuisance.]

2. Intoxicating liquors ⟝275—Burden held on owners of roadhouse to show abatement of nuisance after raid by federal prohibition agents.

Where large quantities of intoxicating liquor had been customarily consumed in roadhouse by patrons, to knowledge of owners, police, and other public officials, burden was on owners to show abatement of nuisance after raid by federal officers, and not on government to show that nuisance continued.

Separate suits by United States against Joseph Budar and others and against Paul E. Gerold and others. On defendants' request for supersedeas, staying injunction decrees and writs pending appeal. Supersedeas denied.

Roy L. Morse, U. S. Atty., of Milwaukee, Wis.

Oscar Nebel and Wm. Shaughnessy, both of Milwaukee, Wis., for defendants Budar and others.

W. B. Rubin and Fawcett & Dutcher, all of Milwaukee, Wis., for defendants Gerold and others.

GEIGER, District Judge. These are two injunction suits, brought by the government to abate as nuisances premises known as "the Golden Pheasant Inn" and "the Hofbrau," owned or conducted by the defendants, respectively. Both cases were heard on Wednesday, October 14th, the government having moved for preliminary injunction; but, upon answers interposed, by consent, the cases proceeded as upon final hearing. In connection or concurrently with the entry of decrees, the defendants, or some of them, indicating a purpose to appeal, asked the court to grant a supersedeas, staying the injunctive decrees and writs pending appeal.

I deem it proper to disclose, in part, reasons impelling me unhesitatingly to deny the application. The cases, like others recently brought to the attention of the court, deal with roadhouses. The defendants not only make no attempt to deny, but they succeed in establishing the prominence of their respective places, and, when their showing is added to that made by the government, the places may be conceded to have been and to be, not only large and active resorts, but truly notorious roadhouses. The physical character of the properties and the enormous rentals paid to the defendant proprietors alone show that large patronage of some kind or other was and is demanded. These following facts are overwhelmingly established in each of the cases:

For many years each of the places has been conducted as a resort to which people in large numbers, of all classes, but principally young people, have resorted day and night for the purpose—disregarding implications—of obtaining food, drink, and varied entertainment. Each has been a place where during the whole of the periods—from four to six years—people who there congregated have there had and there consumed intoxicating liquor, coming in some way from some source. In my judgment, upon the record here, scarcely more need be noted than the concessions—at times freely, at other times reluctantly, made by the defendants or parties in interest—that for years, daily and nightly, within the cognizance, with the express consent, and for the direct or indirect pecuniary consideration and advantage of those conducting them, these places were used by a generality of pa-

trons for the purpose of there consuming liquor; and, of course, for its possession and keeping there in some way, by some one, to the extent essential for the accomplishment of that purpose. That is the narrowest statement of the cases possible to be made on behalf of the defendants.

To the foregoing may be added facts which the defendants may proffer, which upon their face would seem to suggest a revolting defense, viz. that the general conduct of the places was at all times within the cognizance of peace officers present in larger or smaller numbers, but with insistent regularity, who either approved of all that was easily to be seen, or, seeing it, were quite indifferent respecting the discharge of duty which the facts not only invited, but compelled; that is to say, the defendants in substance urge that these nuisances were hypothetical, they were not real, in the sense of the law, because up to now officers under duty to act either consented or did not object, and hence, in a sense, a sort of immunity is now available.

[1] In disposing of the cases the opinion was expressed that, if places of this character may be conducted rightfully and with safety unless and until the government is able to show that those in their conduct were manufacturing and were personally selling or bartering liquor, or were keeping it in the sense that they had a stock of their own on hand, which was being kept much as a stock of merchandise or other articles of personal property are kept with the intent of either preserving them to the personal use of the owner, or for his personal advantage upon a true sale or bartering, a void was left large enough to swallow up the whole law. I do not understand that the word "kept," if this law is to have anything like the fair interpretation essential to accomplish its objects, must be construed as including "personal custodianship" or dominion by the owner or conductor of a place of intoxicating liquor therein.

As I understand section 21 of title 2 of the Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½jj), its definition of nuisances comprehends places where intoxicating liquors are "manufactured, sold, kept, or bartered in violation of this title"; also the liquor and property kept and used in maintaining the same (places); and the act is directed (1) at the person who maintains such a common nuisance; (2) by section 22 (Comp. St. Ann. Supp. 1923, § 10138½k), by injunctive remedy at the place by restraining the defendant from conducting or permitting the continuance of such a nuisance.

Nowhere is it suggested that the one who maintains the place must be shown to have a personal ownership of the liquor, or that the keeping, selling, or bartering must be shown to be his personal act, or even that the ordinary relationship of agency must subsist between him and the person or persons ostensibly having the direct relationship to the liquor. As indicated in the later portion of section 22, which gives a scope to the remedy—i. e., the power to order that the place "shall not be occupied or used for one year"—the query is: What use was made of the premises with respect to liquor? The statute in terms does not declare such to be the query, but, as indicated, such is the object, and the congressional expectation as to the character of interpretation to be accorded to the act was voiced thus:

Section 3, tit. 2: "No person shall * * * manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this act, and all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented." Comp. St. Ann. Supp. 1923, § 10138½aa.

And, as indicated upon the presentation of these cases, the showing made on behalf of the government as well as the concessions made by the defendants utterly precludes the thought that the liquor so generally in evidence at these places was there lawfully. The proofs, on the contrary, demonstrate that much of such liquor was illegally manufactured, that all of it had been the subject of unlawful transportation, and that under no provision of the law could it be lawfully possessed by any one at those places. And of course, if the defendants' asserted interpretation of the nuisance statute has any merit, then, as indicated, these places may be maintained expressly as places of assembly for individual possessors and users of liquor no matter when, how, or from what source obtained (except that the proprietor or conductor of the place must not personally furnish it to them); and the government must be content to endeavor enforcement of the law only against the individuals so assembling at these places. Of course this absurdity leads to the further conclusion that such a place, though conspicuous because of the presence of liquor, is not maintained by its owner or conductor for liquor purposes, because it is not his liquor, and therefore no one is maintaining

the place within the meaning of the law, because no one is "keeping" liquor in the place. I am content to say that upon the statement of the defendants' case, as above indicated, there is no necessity for consulting lexicons to find a meaning to be ascribed to the word "kept" which will enable escape from the plain purpose of the statute.

But I do not believe that upon the showing made in these cases it is at all necessary to confine them to the narrow debate respecting the meaning of the word "kept" in the nuisance statute. It may be that in individual cases the government does not produce testimony showing actual sales or bartering. Common knowledge, however, supports not merely the inference, but a rather firm belief, respecting some kind of bartering or selling at or very near to places where hundreds of people congregate and where in some way they receive or have and consume liquor. If, under the law, such a place may be maintained so long as the proprietor or conductor thereof can insist that he did not personally possess, sell, or barter in the liquor which was always present, the law casts upon him no obligation except that he shall not know. Thereupon he may safely maintain the place, and with safety permit the liquor to be present, and possessed by some one, and of course may invite the liquor-possessing public to bring their liquor and to bargain with him for the privilege of having it in his place to be there consumed, and, as shown in this case, sell them the accessories, and the accessory service needful for its consumption—all at prices which make his selling of the liquor inconsequential. Now, no one would deny that these circumstances disclose, clearly, culpable aiding and abetting in violation of the law respecting both transportation and possession—clear conspiracy—and in my judgment it is idle to say that the place is not a nuisance within the law.

[2] In the Gerold Case, some suggestion was put forward that the government's proof failed to show that, after the raid of August 22d, the nuisance continued. In my judgment the clear response to this is that the defendant failed to show that the nuisance was abated. I am unwilling to accept his rather mild and almost inaudible statement in court that after August 22d he told some one that they could have no liquor on the premises, as evidencing an abatement. The history of the place, its large patronage, and the clear cognizance attributed to police and other public officials of what was going on there, would seem to demand from the de-fendants' side a clear showing of the cessation of the nuisance—in other words, the proof of abatement ought to measure up in quantum and quality with the proof of previous existence.

I presume the defendants are entitled to an appeal as of right, but unless and until appellate authority, which is constituted to revise the judgments of trial courts, will indicate that fair debate may be had upon the meaning of the law applicable to the facts as disclosed in these records, I have no hesitation in denying supersedeas.