**STATE v. CRYSTAL CLUB et al.**

No. 11595.

Court of Civil Appeals of Texas. Galveston.

Jan. 6, 1944.

Rehearing Denied Jan. 27, 1944.

Gerald C. Mann, Atty. Gen., and W. P. Watts, C. E. Alvis, Jesse Owens, and Geo. W. Barcus, Asst. Attys. Gen., for appellant.

Stone, Phipps & Dibrell and Louis J. Dibrell, all of Galveston, for appellees.

MONTEITH, Chief Justice.

This action was brought by the State of Texas to enjoin the Crystal Club, a corporation, its officers, agents and employees, from violating any of the provisions of the Texas Liquor Control Act and to adjudge the property used by said Club located at 2106 Market Street, in Galveston, Texas, as a nuisance.

The State alleged that the premises occupied by the Crystal Club was then being used and that it had for several weeks preceding the filing of this action been operated as an open saloon and that appellees and each of them had kept and sold intoxicating liquors on said premises in violation of the provisions of the Texas Liquor Control Act and that by reason thereof the State was entitled to the injunction sought against each of the defendants named in the action, appellees herein.

The case was submitted to the jury under 19 special issues. In answer to special issue No. 1, the jury found that on or about April 8, 1943, the date on which the action was filed in the district court of Galveston County, the Crystal Club was not a place where liquor was sold or kept for beverage purposes by the drink or in broken or unsealed packages. Acting under instructions from the trial court, the jury did not answer special issues Nos. 2 to 7, wherein they were asked separately whether the named appellees, on or about April 8, 1943, had operated or assisted in the operation of an open saloon as that term had been defined, or whether they had sold or had in their possession for sale without a permit any liquor on the premises occupied by the Crystal Club.

In answer to special issues Nos. 8 to 19, inclusive, the jury found, in substance, that, on or about April 8, 1943, none of the defendants, appellees herein, had had in their possession, sold or assisted in selling liquor without a permit and that none of them were guilty of operating an open saloon as that term was defined in the court's charge on that date.

Based on the answers to the special issues submitted, judgment was rendered by the trial court denying to appellant the relief sought.

The trial court refused appellant's motions for a peremptory instruction at the conclusion of the testimony and for judgment non obstante veredicto after the jury's verdict was returned.

Appellant bases its appeal upon three main contentions. It complains of the action of the court in refusing its motions for an instructed verdict and for judgment non obstante veredicto for the alleged reason that· it appears without dispute from the record that, on various dates in December, 1942, and February, March and June, 1943, intoxicating liquors were kept, stored, possessed and sold in the building occupied by the Crystal Club, all in violation of the Texas Liquor Control Act. It complains of the action of the trial court in limiting the jury in its consideration to the determination of whether the Crystal Club was a place in which liquor was kept and sold on or about April 8, 1943, and it complains of the Court's action in failing and refusing to submit to the jury appellant's requested special issues in which the jury was asked to determine whether any of the various defendants in the suit, appellees herein, had in their possession or had sold intoxicating liquors on the premises occupied by the Crystal Club on any of the various dates specifically named in appellant's petition.

It was admitted by the parties that appellee, Mrs. Fowler, was the owner of the property in which the Crystal Club was located and it was shown without dispute that neither the appellee corporation nor any of the other appellees in this cause had been issued any kind or character of permit either to handle, possess or store intoxicating liquors.

J. T. Prewitt, an employee of the Liquor Control Board, testified on the trial that on or about February 9, 1943, he went to the Crystal Club with another inspector, J. C. Baggett, and a sailor, and that he purchased three Scotch and soda drinks from the bar maid, Margie Balloglia, one of the appellants herein, for which he paid' her and that he preserved a portion of one of the drinks. He testified that on the dates of February 12, 15 and 18, 1943, he again went to the Club in company with other parties and purchased whiskey highballs on each occasion which were served to him from broken, unsealed containers. He testified that he was not a member of the Club; that he saw bottles on the bar labeled liquor, whiskey, gin and rum; that when he was there he saw a number of people standing up at the bar and drinking and that he saw some of them order drinks and pay for them. Mr. Prewitt identified the various bottles in which he had pre-

served a portion of the drinks purchased by him. It was admitted that the contents of each exhibit contained more than 4% of alcohol by weight.

J. C. Baggett, another employee of the Liquor Control Board, confirmed the testimony of witness Prewitt.

W. Y. Mills, another employee of the Liquor Control Board, testified that he went to the Crystal Club about December 16, 1942; and seized nine cases of ale, two cases of whiskey, sealed, two quarts of gin, sealed, various packages of ale, whiskey, gin and rum, sealed, and various bottles of whiskey, gin and rum, unsealed and partially filled. He testified they filed charges against Johnnie Nounes, one of the appellees herein, for possession thereof, and that he pled guilty in the county court and paid a fine on a charge of running an open saloon. Mr. Mills testified that he again visited the Crystal Club on January 25, 1943, at which time he found various cases of whiskey, gin and wine, sealed and unsealed; that on March 10, 1943, he again went to said premises when Johnnie Chevers, one of the appellees herein, was there and that they obtained six partially filled bottles of Bourbon whiskey; that on March 15 he again returned to said building and seized one-fifth bottle of rum and a glass of whiskey; that on March 13 he returned to said place and obtained bottles of whiskey and rum partially filled.

Henry A. Kahn, another employee of the Liquor Control Board, testified that he went to the Crystal Club at 2106 Market Street in Galveston, on February 9, 10, 12, and 25, 1943, at all of which times he purchased drinks containing intoxicating liquors.

W. J. Reid also testified that on or about June 13, 15, and 17, 1943, he went to the Crystal Club and purchased drinks containing alcoholic liquors, for which he paid, and that he preserved a sample of each of said drinks as exhibits in the trial of the case.

H. C. Grandoff who was placed on the stand by appellees testified that he was a member of the Crystal Club; that he had liquor to drink in the Crystal Club which he had taken there; that a group of men chipped in and bought whiskey which they carried to the Club; that they paid a fee for each drink; that the liquor they carried to the Club was seized by the officers when they raided it. No officer of the corporation and none of the individual defendants

in the case, appellees herein, took the stand or testified in the trial of the case in the district court.

Articles 666 and 667 of Vernon's Annotated Penal Code of the State of Texas, with their various subdivisions, are known as the Texas Liquor Control Act.

Article 666—2 thereof provides that the entire Act shall be deemed an exercise of police power, and that all of the provisions thereof shall be liberally construed for the accomplishment of that purpose.

Article 666—3(a) defines an open saloon as any place where any alcoholic beverage or any liquor is sold or offered for sale for beverage purposes by the drink or in broken or unsealed containers or any place where such liquors are sold or offered for sale for human consumption on the premises where sold.

Art. 666—3a defines alcoholic beverage as any beverage containing more than 1/2 of one per cent of alcohol by volume, which is capable of use for beverage purposes either alone or when diluted.

Art. 666—4 provides that:

"It shall not be unlawful to manufacture, distill, brew, sell, import, export, transport, distribute, warehouse, store, possess, possess for the purpose of sale, bottle, rectify, blend, treat, fortify, mix, or process any liquor in this State nor to possess any equipment or material designed for or capable of use to manufacture liquor, provided that the rights or privileges so to do are granted by any provision of this Act. It is further expressly provided that any rights or privileges granted by the provisions of this section, as exceptions in other sections shall be enjoyed and exercised only in the manner as provided. Any act done by any person which is not granted in this Act is hereby declared to be unlawful."

"(a) It shall be unlawful for any person to manufacture, distill, brew, sell, possess for the purpose of sale, import into this State, export from the State, transport, distribute, warehouse, store, solicit, or take orders for, or for the purpose of sale to bottle, rectify, blend, treat, fortify, mix, or process any liquor in any wet area without first having procured a permit."

Art. 666—6 prescribes the duties of the Texas Liquor Control Board, and subdivision (c) thereof makes it the duty of the Board to investigate and aid in the prosecution of violations of said Act.

Art. 666—15 prescribes a classification of the various permits that can be granted by the Texas Liquor Control Board for the sale and handling and distribution of intoxicating drinks.

Art. 666—29 provides that: "Any room, building, boat, structure, or place of any kind where liquor is sold, manufactured, bartered, or given away in violation of this Act, or of any rule, or regulation of the Board, or where persons are permitted to resort for the purpose of drinking liquor in violation of the law, or any place where such beverages are kept for sale, barter, or gift in violation of the law, and all liquor and all property kept and used in said place, hereby are declared to be a common nuisance and any person who maintains or assists in maintaining such common nuisance shall be guilty of a violation of this Act. Any county or district attorney or the Board or any agent or employee of this Board in the county where such nuisance exists, or is kept, or maintained, may maintain an action by injunction in the name of the State, or the Board to abate and to temporarily and permanently enjoin such nuisances."

Art. 666—42 provides that: "Any room, house, building, boat, vehicle, structure, or place where any alcoholic beverage is manufactured, sold, kept, stored, bartered, or given away in violation of the laws of this State, and all alcoholic beverages, equipment, and property kept and used in maintaining the same is hereby declared to be a common nuisance and may be seized without warrant by any representative of the Board or any peace officer."

The material parts of Art. 667—27 provide that: "Upon having called to his attention by affidavit of any credible person that any person is violating, or is about to violate, any of the provisions of the Texas Liquor Control Act * * * it shall be the duty of the Attorney General, or the District or County Attorney, to begin proceedings to restrain any such person from the threatened or any further violation * * * and the district judge shall have authority to issue restraining orders without hearing, and upon notice of hearing to grant an injunction, to prevent such threatened or further violation by the person complained against."

■ While it is the established rule in this State that an appellate court will not disturb the findings of a jury where there is some evidence to support the ver-

dict unless it is clearly shown to have been prompted by passion, bias, prejudice or some other improper motive (McCrory's Stores Corporation v. Murphy, Tex.Civ. App., 164 S.W.2d 735, writ refused), our courts have uniformly held that, where the evidence on the essential facts is such that reasonable minds can not differ as to its verity and inference, a question of law is then presented and it is the duty of the trial court to discharge the jury and enter judgment upon such indisputable facts. May v. Donalson, Tex.Civ.App., 141 S.W. 2d 702; Lewis et al. v. Clark, Tex.Civ. App., 149 S.W.2d 244; Kirby Lumber Co. v. Temple Lumber Co., 125 Tex. 284, 83 S.W.2d 638; 41 Tex.Jur., page 939, Sec. 169.

In the instant case five witnesses were introduced by appellant, each of whom testified positively that upon various dates from December 16, 1942, to June 15, 1943, they had gone into the Crystal Club and that on each occasion they had purchased intoxicating liquor from one or more of the club's employees. Their testimony is undisputed that intoxicating liquors were being kept in the building on said premises and that they were in the possession of the appellees who had sold the liquor to them and had collected the price therefor.

The only testimony introduced by appellees in the trial of the case was that of the witness Grandoff, who testified that he had taken liquor to the Crystal Club for the use of himself and his friend and that it had been seized by the officers of the Liquor Control Board when they raided the club. No evidence was introduced by appellees in the trial of the case to controvert the facts specifically alleged by appellant and testified to by its witnesses.

Article 4664, Revised Statutes of 1925, provides that: "Any hotel, rooming house or boarding house, country club, garage, rent car stand, or other place to which the public commonly resorts for board or lodging, or commonly congregate for business or pleasure, where intoxicating liquors are kept, possessed, sold, manufactured, bartered or given away, or to which persons resort in assembling of two or more persons to the room for the purpose of drinking intoxicating liquors, * * * is hereby declared to be a common nuisance."

In the recent case of Parker v. State, Tex.Civ.App., 161 S.W.2d 319, writ of error refused, it is held that said Article 4664

was not in conflict with or repealed by the adoption of the Liquor Control Act but that it was supplementary to said act. This action was brought by the State to abate a nuisance which consisted of a building used as a dance hall and the premises immediately surrounding it to which persons had resorted for the purpose of drinking intoxicating liquors. The Waco Court of Civil Appeals affirmed a judgment of the trial court abating the nuisance and writ of error was refused by the Supreme Court. Under this authority, the State, in the instant case, had unquestionably made the necessary proof to constitute the Crystal Club a common nuisance on the dates testified to by its witnesses under said Article 4664, Revised Civil Statutes, and 666—29 of the Penal Code.

In the case of Engler v. United States, 8 Cir., 25 F.2d 37, 39, it was held that when the Government once established the fact that a building was being used in violation of the liquor law, the burden was thereby placed upon the owners of the premises to show that such use had ceased and that a liquor nuisance once shown to exist will be presumed to continue. In the Engler case it was admitted that on the dates of April 6 and 15, 1925, intoxicating liquors were sold on the premises in question. The case was not tried and finally disposed of until April, 1927. There was no evidence in the record of any violation of the law after April, 1925, and it was the contention of the appellant that the burden was upon the Government to show that in 1927 the building was still being used in such way as to constitute it a nuisance. In overruling this contention the court stated: "* * *. The burden was not on the Government to show that the nuisance continued. The burden to establish that it had been abated was on the owner. * * * A nuisance, once shown to exist, will be presumed to continue, especially in the absence of change of environment. United States v. Budar, D.C., 9 F.2d 126; Shore v. United States, 7 Cir., 282 F. 857."

In the instant case, the undisputed evidence that on various dates in December, 1942, and in January, February and March, 1943, intoxicating liquors were kept, stored, possessed and sold on the premises occupied by the Crystal Club contrary to the provisions of the Texas Liquor Control Act constituted said premises a common nuisance under said Articles 666—29 on said

dates and, no proof having been made that such nuisance had been abated on April 8, 1943, the date of the filing of this action, or on July 12, 1943, the date of the trial thereof, we think that the trial court was in error in his failure to instruct a verdict in favor of appellant at the conclusion of the testimony.

The judgment of the trial court must be reversed and judgment here entered decreeing the building occupied by the Crystal Club at 2106 Market Street, Galveston, Texas, to be a nuisance, and that appellees and each of them be enjoined from maintaining or assisting in maintaining said building as a nuisance, or from selling, possessing, storing, or keeping for the purpose of selling any intoxicating liquors therein.

Reversed and rendered.