### McMAHON et al. v. STATE.

#### No. 11956.

Court of Civil Appeals of Texas. Galveston.

Feb. 18, 1948.

John B. McNamara and C. S. Farmer, both of Waco, and B. R. Reeves, of Palestine, for appellants.

Price Daniel, Atty. Gen., William S. Lott, Artie P. Stephens, and Clarence Y. Mills, Asst. Attys. Gen., John Dowdy, Dist. Atty., óf Athens, and Franklin C. Williams, Co. Atty. of Palestine, for appellee.

GRAVES, Justice.

This general statement—edited here in immaterial respects only—is, in substance, taken from the appellee's brief:

This is an appeal by defendants below, appellants here, from the interlocutory order of the trial court, granting a temporary injunction against the appellants, Orbie McMahon, Pat Morris, Charlie Lee Smith, and Oscar (Red) Price, in favor of the State of Texas, enjoining them: (1) from maintaining and assisting in maintaining a nuisance, as that term is defined by the Texas Liquor Control Act, Articles 666—1 et seq., and 667—1 et seq. Vernon's Ann.Penal Code of Texas, and by Article 4664, R.C.S. of Texas, on, at, and from the premises described in appellee's petition; (2) from unlawfully selling, possessing for the purpose of sale, and transporting, any and all intoxicating beverages in any place in Anderson County, Texas, and (3) from violating any of the provisions of the Texas Liquor Control Act in any way, or in any manner, in Anderson County, Texas. It was admitted that Anderson County was a "dry area", as that term is defined by the Texas Liquor Control Act, at all times relevant to this cause.

The State, as plaintiff below, had filed its suit herein on October 2nd of 1947, against the appellants as defendants, alleging that Anderson County was a "dry area" within the meaning of the Liquor Control Act; that a building located at 600 West Oak Street in Palestine was being operated as a nuisance; that Ivy Lee Morris, Pat Morris, Orbie McMahon, and Charlie Lee Smith, were aided in maintaining and operating the premises as such a nuisance by Price and Marshall Morris; that the First National Bank of Palestine owned a vendor's lien on the property, and that J. K. Selden, under a lease or rental-agreement, used part of it as a garage.

It declared-upon 19 specific violations of the Liquor Control Act by the parties so charged, in substance as follows:

1. On September 19, 1944 (2 years 11 months before filing petition for injunction), Oscar Price possessed whiskey for sale in Anderson County.

2. On July 4, 1946 (more than 1 year before filing petition for injunction), Marshall Morris sold whiskey in Anderson County.

3. On July 22, 1946 (more than 1 year before petition for injunction was filed), Pat Morris sold whiskey in said premises.

4. On July 7, 1946 (more than 1 year before petition for injunction was filed), Oscar Price sold whiskey to W. E. Russell on the above described premises.

5. On July 22, 1946 (more than one year before filing petition for injunction), Oscar Price sold whiskey to J. L. Hamilton on above described premises.

6. On March 22, 1945 (more than two years prior to filing petition for injunction), Pat Morris possessed, in Anderson County, whiskey for the purpose of sale.

7. On March 20, 1945 (more than two years prior to filing petition for injunction), Pat Morris sold whiskey in Anderson County, Texas.

8. On March 17, 1945 (more than two years prior to filing petition for injunction), Pat Morris sold whiskey in Anderson County, Texas.

9. On March 17, 1945 (more than two years prior to filing petition for injunction),

Oscar Price sold whiskey in Anderson County, Texas.

10. On March 19, 1945 (more than two years prior to filing petition for injunction), Pat Morris sold whiskey in Anderson County, Texas.

11. On or about March 18, 1945 (more than two years before filing petition), Pat Morris sold whiskey to P. A. Thornbuy in Anderson County, Texas.

12. On or about March 18, 1945 (more than two years prior to filing petition), Oscar (Red) Price sold whiskey to P. A. Thornbuy in Anderson County.

13. On or about September 4, 1947 (28 days prior to filing petition), Charlie Lee Smith sold whiskey to J. T. Prewitt in Anderson County.

14. On or about February 8, 1942 (more than five years prior to filing petition), Pat Morris sold whiskey to Wallace Law in Anderson County.

15. On or about December 2, 1946 (10 months prior to filing petition), Pat Morris possessed, for the purpose of sale, whiskey on said premises.

16. On or about December 21, 1936 (nearly eleven years prior to filing petition), Orbie McMahon possessed whiskey for the purpose of sale in Anderson County.

17. On or about July 24, 1946 (more than one year prior to filing petition), Orbie McMahon possessed whiskey for the purpose of sale in Anderson County.

18. On February 4, 1947 (about eight months prior to filing petition for injunction), Orbie McMahon possessed whiskey for the purpose of sale (place of possession not alleged).

19. On April 3, 1947 (six months before filing petition for injunction), Orbie McMahon possessed whiskey for the purpose of sale on said premises.

Of such specific acts, these 5 only were so alleged to have been committed upon the premises—that is, the building at 600 West Oak Street in the City of Palestine—to-wit: Nos. 3, 4, 5, 15 and 19.

The parties, on appeal, agree that the substantive evidence heard by the court under such pleadings against the four appellants it so enjoined—that is, Orbie McMahon, Pat Morris, Charlie Lee Smith, and Oscar (Red) Price—respectively, was as follows:

"Orbie McMahon

"1. Orbie McMahon was arrested February 4, 1947, (eight months before the petition for injunction was filed) in connection with 21 pints of whiskey being found in his pick-up automobile parked across the street from the building involved.

"2. On April 3rd (year not shown) two pints of whiskey were found in automobile parked in the garage described in plaintiff's petition. Orbie McMahon, Pat Morris, and Charlie Lee Smith, were present at the garage when the whiskey was found.

"3. These eight complaints were filed against Orbie McMahon:

"a. Charging that on April 11, 1936, (more than ten years before petition for injunction was filed) McMahon maintained a room where beer was kept for purpose of sale. No disposition shown of case.

"b. Charging that on December 21, 1936, (more than ten years before petition for injunction was filed) McMahon possessed whiskey for the purpose of sale, and paid fine therefor.

"c. Charging that on March 11, 1937, (more than ten years before petition for injunction was filed), McMahon kept a common nuisance etc., for which he paid a fine.

"d. Charging that on April 23, 1937, (more than ten years before petition for injunction was filed), McMahon maintained a room where liquor was sold, etc., fined $25.00.

"e. Charging that on July 2, 1937, (more than ten years before petition was filed), McMahon maintained a place where intoxicating liquor was kept, etc., fined $25.00.

"f. Charging that on July 24, 1946, (more than one year before petition was filed), McMahon possessed liquor for purpose of sale—fined $100.00.

"g. Charging that on February 4, 1947, (eight months before petition was filed), McMahon possessed whiskey for purpose of sale. No disposition of case shown.

"h. Charging that on April 3, 1947, (six months before petition was filed), McMahon possessed whiskey for purpose of sale. Disposition of case not shown.

"Pat Morris

"1. On April 3 (year not shown), two pints of whiskey were found in a car parked in the garage at this building. He, together with Orbie McMahon and Charlie Lee Smith were at the garage at the time.

"2. These six complaints were filed against him as follows:

"a. Charging that on February 8, 1942, (more than five years before petition for injunction was filed), he sold whiskey, fined $100.00

"b. Charging that on March 22, 1945, (more than two years before petition for injunction was filed), he possessed liquor for purpose of sale, for which he paid a fine.

"c. Charging that on March 20, 1945, (more than two years before filing petition for injunction) he possessed intoxicating liquor for purpose of sale, for which he paid a fine.

"d. Charging that on March 17, 1945, (more than two years before filing petition for injunction), he sold whiskey, for which he paid a fine.

"e. Charging that on December 2, 1946, (10 months before petition for injunction was filed), he possessed whiskey for sale. Tried and acquitted by Jury.

"f. Charging that on April 3, 1947, (six months before petition for injunction was filed), he possessed whiskey for purpose of sale. Still pending.

"3. On March 22, 1945, (more than two years before filing petition for injunction), gin and whiskey were found at Dodd-Davis Filling Station (not the property described in petition for injunction), which was claimed by Pat Morris, and for which he paid a fine.

"4. On September 17, 1942 (more than five years before petition for injunction was filed), he was arrested in Jacksonville, Cherokee County, with some tax-paid whiskey in his pick-up truck. The record does not disclose whether or not a complaint was filed, and does not show disposition of the matter.

"Charlie Lee Smith

"1. On April 3rd (year not shown) two pints of whiskey were found in an automobile parked in the garage described in the petition for injunction, Charlie Lee Smith, Orbie McMahon, and Pat Morris, being present at said garage.

"2. On September 4, 1947 (28 days before petition for injunction was filed), J. L. Prewitt testified that he bought a pint of whiskey from Charlie Lee Smith, at the garage described in the petition for injunction.

"3. A complaint charging that on September 4, 1947, (twenty-eight days before petition for injunction was filed), Charlie Lee Smith sold whiskey to Prewitt. No disposition of case is shown.

"Oscar (Red) Price

"1. Eight complaints were filed against Oscar (Red) Price, as follows:

"a. Charging that on September 19, 1944, (more than three years before petition for injunction was filed), Price possessed whiskey upon which tax had not been paid, for which he paid a fine.

"b. Charging that on March 18, 1945 (more than two years before petition for injunction was filed), Price sold whiskey, (not on premises described in petition for injunction), for which he paid a fine.

"c. Charging that on March 17, 1945 (more than two years before petition for injunction was filed), Price sold whiskey for which he paid a fine.

"d. Charging that on March 18, 1945 (more than two years before petition for injunction was filed), Price sold whiskey, for which he paid a fine.

"e. Charging that on March 19, 1945 (more than two years before petition for injunction was filed), Price sold whiskey, for which he paid a fine.

"f. Charging that on July 22, 1946 (more than one year before petition for injunction was filed), Price sold whiskey, for which he was fined.

"g. Charging that on July 7, 1946 (more than one year before petition for injunction

was filed), Price sold whiskey, for which he paid a fine.

"h. Charging that on July 22, 1946 (more than one year before petition for injunction was filed), Price sold whiskey, for which he paid a fine.

"2. State's witness, Arnold Broughton, testified, that in 1944 (more than three years before petition for injunction was filed), he found some whiskey at Price's place. It is not shown whether a complaint was filed, or a fine paid. This same matter was testified to by State's witness, A. M. Anderson.

"3. State's witness, W. E. Russell, testified that on July 22 (year not shown), he bought a pint of whiskey from Price.

"4. State's witness, W. E. Russell, testified that on July 7, 1946, (more than one year before petition for injunction was filed), he bought a pint of whiskey from Price."

The sole question-of-law involved in this Court is whether or not the trial court abused a sound judicial discretion in granting the appealed-from order. 24 Tex.Jur., Injunctions, page 313, paragraph 253, and foot-note cited authorities.

The appellants present this single point-of-error:

"The undisputed evidence showing that the acts complained of had been fully accomplished prior to the filing of the suit, and there being no evidence of any present violation, or future violation, of the Texas Liquor Control Act, it was error for the court to grant the temporary injunction against the enjoined defendants," and thus as briefly support it:

"There is a paucity of decisions on the question involved, but we believe the case of Birdett et ux v. State [Tex.Civ.App.], 158 S.W.2d 902, sustains our contention that the trial court erroneously granted a temporary injunction.

"In the Birdett case, supra, the petition for injunction was filed on October 24, 1941. The evidence introduced showed that Birdett sold whiskey as follows:

"(1) On June 4, 1941 (four months and twenty days before the petition for injunction was filed).

"(2) On June 13, 1941, four months and eleven days before the petition for injunction was filed.

"(3) On June 13 (later) (four months and eleven days before petition for injunction was filed).

"(4) On June 18, 1941 (four months, six days before petition was filed).

"(5) On July 1, 1941 (three months, twenty-three days before petition for injunction was filed) whiskey and beer were found on Birdett's premises."

The appellee, contrarily, answers with the one counter-point that, "There was no error by the court in granting the temporary-injunction, by reason of the fact that the acts complained of had been fully accomplished prior to the filing of this suit," and cites in support thereof these authorities: Birdett v. State [Tex.Civ. App.], 158 S.W.2d 902; [State v. Birdette, 139 Tex. 357], 162 S.W.2d 932; Engler v. United States [8 Cir.], 25 F.2d 37; Jeter v. State [Tex.Civ.App.], 171 S.W.2d 192, writ refused; Jeter v. State [Tex.Civ. App.], 184 S.W.2d 716; Lindsey v. State [Tex.Civ.App.], 194 S.W.2d 413, writ refused; Lorance v. State [Tex.Civ.App.], 179 S.W.2d 1015; Shore v. United States [7 Cir.], 282 F. 857; State v. Crystal Club [Tex.Civ.App.], 177 S.W.2d 110; Tredway v. State [Tex.Civ.App.], 189 S.W.2d 759; United States v. Budar [D.C.], 9 F.2d 126; Vance v. State [Tex.Civ.App.], 179 S.W. 2d 436; Walker v. State [Tex.Civ.App.], 173 S.W.2d 741.

"Appellee respectfully submits that the Birdett case [Tex.Civ.App.], 158 S.W.2d 902; [State v. Birdette, 139 Tex. 357], 162 S.W.2d 932, is in conflict with the majority rule in Texas concerning common nuisances, as well as the Federal rule. The Birdett case adopts the erroneous view that matters of injunction and common nuisance, where a law violation is involved, are criminal in nature. This erroneous conception applies a presumption of innocence in favor of the wrongdoer—a presumption that he has repented and does not intend to further violate the law.

"Appellee respectfully submits that this case upon which appellants rely has been virtually overruled by the same Court of

Civil Appeals, which rendered said opinion, in three later cases, Jeter v. State [Tex. CivApp.], 171 S.W.2d 192, Jeter v. State [Tex.Civ.App.], 184 S.W.2d 716, and Lindsey v. State [Tex.Civ.App.], 194 S.W.2d 413. The Supreme Court in both the Jeter case [Tex.Civ.App.], 171 S.W.2d 192, and the Lindsey case [Tex.Civ.App.], 194 S. W.2d 413, refused a writ of error. The rule of law followed by the great majority of Texas cases and by the Federal cases is that a status or condition, once shown to exist, will be presumed to continue until an abatement is shown."

The issue-of-law thus so directly joined brings under review the cited two lines of decisions by our Texas Supreme Court; that is, the Birdett holding in 1942, and the Jeter and Lindsey holdings in 1943 and 1946, respectively, all of such cases having been decided primarily by the Eastland Court of Civil Appeals, the Supreme Court having affirmed the first (Birdett), written opinion, and having refused respective writs-of-error in the later two (Jeter and Lindsey), for want of merit and for no reversible error, without written opinions.

This Court agrees that the Birdett decision does not rule this cause, but that the different holdings in the cases so cited and relied upon by the appellee do rule it, upon considerations which, in brief, may be thus outlined:

(1) The facts here are distinguishable, not only upon a mere reading of the "substantive" evidence quoted supra, but further, upon the undisputed facts that the State's petition herein for the injunction awarded not only contained the full averments recited above of violations of the Liquor Control Law, but others, which fully brought the cause, as declared-upon, also within the purview of Articles 4664 and 4665 of Vernon's Texas Civil Statutes, as amended, defining what constitutes a nuisance in the keeping, purchasing, and selling of intoxicating liquors, etc., and how it may be proved.

(2) Such petition was sworn to by the Sheriff of Anderson County, and, in addition to the specific violations above quoted, further alleged that appellants had continuously, since July 1, 1946, until the filing of such petition on October 2 of 1947, purchased, and were then continuing to purchase, at their place of business, whiskey, for the purpose of sale thereof.

(3) Appellants did not in their answers specifically deny under oath any of the State's detailed allegations, nor did any of them, in his own behalf, take the stand to voluntarily testify in the cause, although they were all present in the court during the hearing, and although the appellee-State called the appellant Pat Morris and interrogated him as its own witness, such answers as he gave having been objected to by his own counsel.

This action against appellants was, therefore, clearly not a criminal one, but in its essence was a civil one in rem, the overall objective of which was to abate the nuisance they were alleged not only to be then maintaining, but to be intending to so continue "on, at, and from the premises, 600 West Oak Street, in the City of Palestine."

Wherefore, whatever presumption of innocence might otherwise have existed in their favor was plainly overcome by the sales and other acts they were shown to have made and committed, with their described place-of-business as the fulcrum, or base, of their operations; that situation gave rise to a status, or condition, with reference to that place, which, under well-settled holdings, would be presumed to continue until an abatement thereof had been shown *by themselves;* that, as indicated, they had wholly failed to present.

The applicable rule of law was stated by this Court, through Chief Justice Monteith, in the late case of State v. Crystal Club [Tex.Civ.App.], 177 S.W.2d 110, and need not be here repeated. See also the other holdings cited by the appellee, supra.

Thus the one thing in the record that spoke louder than words against the appellants' cause was their complete failure, in either their pleadings, or by testimony, to show the intent of any of them with reference to the future use of their place-of-business at the time of the trial, despite the then-existing facts about it the State had so adduced.

■ ·Under· equally well-settled rules, the State's testimony against them was strengthened by a presumption, arising from their failure to testify at all, that whatever they, in fact, knew had been adverse to them. Jeter v. State [Tex.Civ.App.], 171 S.W.2d 192, 193; 17 Tex.Jur., page 306.

■ Under these conclusions, there· was no abuse of discretion; they require an affirmance of the judgment; it will be so ordered.

Affirmed.