**CHIN BING SUEY v. STATE.**

No. 4845.

Court of Civil Appeals of Texas.
El Paso.

Dec. 19, 1951.

E. B. Elfers, H. P. Talley, El Paso, for appellant.

Ernest Guinn, County Atty., William C. Collins, Asst. County Atty., El Paso, for appellee.

PRICE, Chief Justice.

This is an appeal from a judgment of the District Court of El Paso County, 41st Judicial District. The State as plaintiff, in an action instituted in its behalf by the County Attorney of El Paso County against Chin Bing Suey, was awarded a judgment against said defendant enjoining him from the maintaining or keeping of a bawdy house or being interested in or aiding and

abetting in keeping of a bawdy house or disorderly house as those terms are defined in the Penal Code, or any part thereof, on the premises known as 403–405 South Oregon Street in the City of El Paso. It was further ordered and adjudged that such premises aforesaid be closed for one year from the date of the judgment unless the defendant posted bond in the sum of One Thousand Dollars, to be approved by the Judge, conditioned that such premises should not be resorted to for purposes of prostitution or kept for aiding and abetting the keeping of a bawdy house. The conditions of the bond required by the judgment were in substantial compliance with Art. 4666, Vernon's Civil Statutes.

The petition of the State charged in substance that the defendant was operating a cafe and bar and bawdy house on the premises in question, that defendant or or about May 1, 1951, repeatedly and habitually theretofore permitted prostitution on said premises and permitted persons to resort thereto for prostitution and has permitted the habitual use of the premises for prostitution, and contemplates and threatens the habitual use of said premises for prostitution and aiding and abetting in prostitution; that contrary to the law he has been keeping, aiding and abetting the keeping of a bawdy house and threatens and contemplates the keeping of a bawdy house on said premises. Defendant denied under oath the material allegations of the State's petition, and plead specially that he had sought the aid of peace officers to the end that persons suspected of practicing prostitution be prevented from entering or remaining on the premises under his control. Trial was to the court without a jury. On demand of plaintiff the trial judge filed findings of fact and conclusions of law.

In substance the court found that defendant operated a bar and cafe on the premises in question at the time the suit was filed, and had operated same for some time previous thereto; that for several years prior to May 1, 1951, a number of prostitutes would from time to time frequent defendant's bar and cafe for the purpose of contacting men and making dates for acts of prostitution at points away from the premises; that no act of prostitution was permitted on the premises and defendant did not profit from the resorting of such persons to his premises other than by the sale of food and wine and beer; that defendant prior to May 1, 1951, had notice or in the exercise of ordinary care should have had notice of the purpose of such prostitutes who were resorting to his place of business; that on April 24, 1951, he received a written communication from the Provost Marshal of the military forces in and around El Paso advising him as to the resorting of prostitutes to his place of business, and that unless the situation was corrected his place of business would be declared out of bounds for the military personnel in and around El Paso. The court further found in substance that after the receipt of this letter from the Provost Marshal defendant contacted police officers and requested police assistance in correcting the conditions complained of and in preventing prostitutes from frequenting the premises; that defendant and his manager were advised by police officers to report to them if thereafter any prostitutes came to the premises, and the court found that on the night of April 30, 1951, defendant's manager did report to the police officers that a negro prostitute was soliciting in the cafe, as a result of which this prostitute was taken into custody by the police officers. It is then found that for some months prior to May 1, 1951, transient negro prostitutes had been coming to El Paso for the purpose of plying their profession, that on the night of May 1, 1951, and with knowledge on the part of defendant and his manager the said police officers raided the premises heretofore described and arrested eight women, six of whom were found to be transient prostitutes, further that on the night of May 1, police officers arrested and took from the cafe premises a prostitute who was at the time intoxicated and that other than this arrest the bar and cafe on the premises above described had been operated and conducted by defendant in accordance with the law; that police officers of the city of El Paso have visited said premises and the bar and cafe at frequent intervals between May

1, 1951, and the date of the trial on June 26, 1951, and with the exception of one prostitute arrested as stated have found no prostitutes on the premises and have found the business to be conducted in an orderly and lawful manner. Further, the court found that the defendant had knowingly maintained and assisted in maintaining at 403–405 South Oregon Street a nuisance by knowingly permitting the said premises to be habitually used as a place where persons resort for the purpose of prostitution, and has kept and has been interested in keeping and abetting a bawdy house as those terms are defined in the Penal Code of the State of Texas, and that said defendant will continue to use said premises for these purposes unless enjoined. The conclusions of law were as follows: The State is entitled to a permanent injunction abating the nuisance and closing the house unless bond is given. Art. 4664–4667, both inclusive, R.C.S. of Texas, Vernon's Ann.Civ.St. arts. 4664–4667; Ex parte Yoshida, 70 Tex.Cr.R. 212, 156 S.W. 1166.

Defendant urges one point of error, as follows: The court having found that prior to the filing of the suit the defendant, Chin Bing Suey, and his manager had contacted police officers, soliciting and arranging for police assistance in preventing prostitutes from using defendant's premises for the purpose of prostitution, and that the efforts of defendant and his manager in cooperation with such police officers had accomplished the purpose of preventing such illegal use of such premises from and after May 1, 1951, the court erred in granting a permanent injunction in this case.

This suit was filed May 3, 1951. Defendant attacks the findings of fact made by the court in substance that defendant intended, threatened or contemplated the use of the premises for the unlawful purpose charged, after May 1, 1951.

The permanent injunction was in terms substantially as follows: Chin Bing Suey be and hereby is enjoined from maintaining said nuisance and from keeping or being interested in the keeping of a bawdy house and disorderly house as those terms are defined in the Penal Code at such premises, place and building, or any part thereof.

This portion of the injunction in no way interferes with any legitimate activity of defendant or any lawful use of the property. The Penal law forbids the acts enjoined. The judgment further decreed that the place at 403–405 South Oregon Street be and hereby is ordered closed for one year from this date unless said defendant make bond with sufficient sureties, payable to the State, in the penal sum of One Thousand Dollars, conditioned that said premises shall not be resorted to for the purpose of prostitution or kept for aiding or abetting the keeping of a bawdy house. Unless the evidence warranted a finding that defendant was threatening and probably would continue to operate the premises in the future in such unlawful manner, the judgment did seriously interfere with his lawful property rights in him as the condition to the lawful use of his property required the giving of the bond. Defendant's position is that even though he had operated the property so as to constitute same a nuisance as found by the court, that before May 3, 1951, the date of the filing of this suit, he had voluntarily abated such nuisance.

In the discussion of this case it will not be necessary to discuss extensively the criminal and civil statutes authorizing the proceeding in the case. Art. 510, Vernon's Penal Code, defines a bawdy house as follows: "A bawdy house is one kept for prostitution or where prostitutes are permitted to resort or reside for the purpose of plying their vocation."

Art. 511 defines an assignation house: "An assignation house is a house, room or place where men and women meet by mutual appointment, or by appointment made by another for the purpose of sexual intercourse."

Art. 513 defines a disorderly house as: "A disorderly house is an assignation house, or any house to which persons resort for the purpose of smoking or in any manner using opium."

Art. 514 provides the punishment for the keeping of a bawdy or disorderly house.

Articles 4664–4667, V.C.S. all bear relation and authorize the character of proceeding exhibited by the instant case. Art. 4664 declares among other things that a

house where persons resort for the purpose of gambling or for the purpose of prostitution is a common nuisance; further, any person who knowingly maintains or assists in maintaining such a place is guilty of maintaining a nuisance. Art. 4666 authorizes suit by the Attorney General or County Attorney for the abatement of such nuisance and further provides if the judgment be in favor of the State then judgment shall be rendered abating said nuisance and enjoining the defendants from maintaining the same, and ordering that said house be closed for one year from the date of said judgment unless the defendants in said suit or the owner, tenant or lessee of said property make bond payable to the State at the county seat of the county where such nuisance is alleged to exist, in the penal sum of not less than One Thousand Dollars nor more than Five Thousand Dollars, with sufficient sureties to be approved by the Judge trying the case, conditioned that the acts prohibited by this law shall not be done or permitted to be done in said house.

Defendant asserts that the evidence established that it was not in existence on said May 3rd, 1951, nor at any time between such date and the 26th of June, 1951, the date of the trial herein; further attacks the finding in substance that defendant threatened and contemplated the continued maintenance of the nuisance complained of in the future. There was evidence and the court found that defendant after the last week in April 1951 took steps to prevent the resorting of prostitutes to his bar and cafe for the purpose of soliciting trade. The finding of the court in this respect is the finding of evidentiary rather than ultimate facts. However, a fair construction of the court's findings, we think, is that from on or about the first day of May, 1951, to the date of the trial, the defendant had operated the premises in a lawful manner. The evidence is ample to show that for some time prior to May 1, 1951, the defendant had operated this place so as to constitute same a nuisance within the meaning of the law.

■ In providing in substance that defendant give bond in the sum of One Thousand Dollars conditioned that the place would not be operated as a nuisance or that the place be closed for the period of one year, the trial court undoubtedly applied Art. 4666 of the Revised Statutes, which is the only provision that authorizes the enjoining of the operation of the premises for the period of a year unless the bond mentioned in said article be given. Said article does not provide for the enjoining of a threatened or contemplated use of the premises for the purpose of a nuisance. The action seeking the abatement of a nuisance and the injunction can only be instituted and maintained by the Attorney General, District Attorney or County Attorney. By the very terms of the article it applies only to an existing nuisance.

The instant action was filed on May 3rd, 1951. No. 7 of the Court's Findings of Facts is as follows: "The court finds that after the raid on the night of May 1, 1951, police officers arrested and took from the cafe premises a prostitute who was at the time intoxicated, and other than this arrest the bar and cafe on the premises above described have been operated and conducted by defendant in accordance with law; that police officers of the city of El Paso have visited said premises and the bar and cafe at frequent intervals between May 1, 1951 and the date of the trial on June 26, 1951, and with the exception of the one prostitute arrested as above stated have found no prostitutes on the premises and have found the business to be conducted in an orderly and lawful manner."

A fair construction of this finding is that on May 3rd, the date of the filing of the suit, the premises in controversy were not a nuisance, were not resorted to by prostitutes in furtherance of their vocation. This is fortified by the fact that shortly after April 24, 1951, the date of the letter from the Provost Marshal, the defendant took active and apparently effective steps to abate the nuisance complained of. It is asserted by appellee that the discontinuance of the nuisance was partly brought about by the granting of the temporary injunction. Clearly it had ceased before the granting of the temporary injunction. It was agreed between counsel for the plain-

tiff, the State, and the defendant, that the restraining order should stay in force and effect until the final trial.

An action to abate a nuisance does not ordinarily lie where the nuisance has been abated before the institution of suit therefor. 30 Am.Jur. p. 433, Sec. 162.

In this case, under the Findings of Fact, neither on the date of the institution of the suit nor on the date judgment was rendered abating the nuisance was such nuisance in existence. On and between May 3rd and June 26th the premises were operated in accordance with law. This being the case, in our opinion application for abatement and for an injunction did not lie under Art. 4666. State v. Crystal Club, Tex.Civ.App., 177 S.W.2d 110; McMahon v. State, Tex. Civ.App., 208 S.W.2d 682.

In each of the above cases the evidence was held to be sufficient to establish existence of the nuisance at the time of the filing of the suit to abate same. In each, however, the establishment of the existence of the nuisance at such time was inferentially recognized as an essential fact to a successful action for abatement.

Art. 4667, V.C.S., does authorize an injunction for the threatened or contemplated use of any premises, place or building, or part thereof as a nuisance. This action may be maintained on behalf of the state or by any citizen, but such Statute only provides for the enjoining of the maintenance of the nuisance. It does not authorize the closing of the premises involved for lawful use for a period of one year, as does Art. 4666. There is some doubt in our minds as to the sufficiency of the evidence to sustain the finding of the trial court that in the future unless enjoined defendant would operate the premises in the manner complained of to constitute same a nui-

sance. However, we resolved this issue in favor of the court's finding.

As has been stated, the defendant has no substantial complaint if he be enjoined from conducting such a nuisance as the one here charged on his premises. We note in passing, though not considered of any particular significance, that the State did not request in its petition that a bond of One Thousand Dollars be required of defendant before he could continue to operate his business on the premises in question in a lawful manner. In this respect the prayer of the State is: "* * * the defendants be permanently restrained from maintaining and operating the said premises as a bawdy house and closing the said premises as a bawdy house for one year from the date of judgment unless the said defendant make bond payable to the State."

The judgment herein provided that the "* * * premises in question be and hereby are ordered closed for one year from this date unless said defendant Chin Bing Suey or the owner, tenant or lessee of said property make bond payable to the State of Texas in the penal sum of $1,-000.00." However, this inartificial pleading is not the basis of our judgments.

It is ordered that that portion of the judgment permanently enjoining the defendant from maintaining a nuisance on the property in question be in all things affirmed; that portion of the judgment requiring defendant to execute a bond in the sum of One Thousand Dollars before he could operate the premises in question for a lawful purpose be reversed and judgment here rendered that as to said prayer closing the premises for one year unless the defendant give the bond required by Art. 4666 the plaintiff take nothing and same be in all things denied.