**Neil McCLAIN et al., Appellants,**

**v.**

**The STATE of Texas, Appellee.**

No. 3126.

Court of Civil Appeals of Texas.

Eastland.

Nov. 19, 1954.

Earl Conner, Jr., Conner & Conner, Eastland, for appellants.

Horace Wimberly, Asst. Atty. Gen., Bill Allcorn, Dist. Atty., Firman Smith, County Atty., Brownwood, for appellee.

GRISSOM, Chief Justice.

The State obtained an injunction against Neil McClain, Evelyn Setters, E. A. Penn and others permanently enjoining them from unlawfully selling, possessing for sale, or offering for sale, alcoholic beverages in violation of the Texas Liquor Control Act, Vernon's Ann.P.C. art. 666-1 et seq., at a building and premises known as "Neil's Place" in Brown County and from maintaining said place as a common nuisance, and an order closing said building for one year. The named defendants have appealed.

Their points are, in effect, that the evidence was insufficient to support the findings necessary to support said judgment.

The court found in the judgment that E. A. Penn was the record owner of the premises, having acquired same by deed from Neil McClain on March 11, 1953; that the building was maintained by defendants as a common nuisance; that defendants violated the provisions of said Act on numerous occasions alleged in plaintiff's petition and that when the suit was filed defendants were about to violate said Act in Brown County and when the cause was heard they were about to and intended to violate said Act.

Trial was to the court. No other findings of fact or conclusions of law were filed. To determine whether the evidence was sufficient to sustain the judgment we have read the statement of facts. We call attention to the following testimony pertinent to that question.

It was agreed that Brown County, where the house and premises in question are situated is a dry area, as that term is defined in the Texas Liquor Control Act. Inspector Taylor of the Liquor Control Board testified that he purchased beer at "Neil's Place" on July 21, 1951, from Evelyn Setters, who was directed by Neil McClain to

sell it to him; that he paid her $4 for the beer; that he purchased it at a trailer house back of the building, which was a dance hall and that the trailer house "was against the building."

Inspector Hynd testified that on July 18, 1953, he purchased a half pint of whiskey from Charlie Moore, one of the defendants, at "Neil's Place"; that he asked Evelyn Setters about getting a half pint and she told him to wait a few minutes, that Charlie Moore would be back, that he waited a few minutes, Moore returned and the Inspector told Moore he wanted a half pint; that at the same time another person asked Evelyn Setters about getting some whiskey and she told Moore to bring two bottles; that Moore came in and handed the Inspector a half pint and the other man a half pint; that he paid Moore for the whiskey; that he purchased this whiskey in the back room of "Neil's Place"; that there was a half partition between the front and back rooms and from where he sat he could see the booths along the wall and the juke box and the dance floor; that this was in the night-time and Evelyn Setters was going back and forth from the front to the back of the building.

Inspector Middleton testified that on October 18, 1953, he purchased a pint of whiskey from Moore while sitting in a booth in the rear of "Neil's Place"; that it was about 2:30 o'clock in the morning when he bought the whiskey and people were there dancing and drinking from bottles labeled "whiskey"; that he was there with Inspector Douglas when Douglas made a purchase from Moore at the same booth in "Neil's Place"; that Douglas made his purchase shortly before Middleton did.

Inspector Giles testified he had made purchases at "Neil's Place" on three occasions and went there once on a raid. That on the 10th and 11th of April, 1952, and on another day near that time, he purchased beer from Evelyn Setters at the trailer house located beside the building known as "Neil's Place"; that on April 10th he purchased 12 cans of beer from Evelyn Setters and on the 11th he bought 12 cans of beer from her and paid her for it at "Neil's Place." That the building known as "Neil's Place" was then padlocked; that he purchased beer there from Neil McClain on April 9, 1952.

Inspector W. V. Ray testified that he knew McClain, Setters, Moore and Penn and some of the other defendants; that he had found alcoholic beverages at "Neil's Place"; that on June 27, 1952, in company with Constable Pruitt, he watched "Neil's Place" and saw Albert Minica, one of the defendants, unload beer just northeast of "Neil's Place", right by his place but not on "Neil's Place"; that it was 3:40 P. M. when he got there; that in a few minutes Minica and Evelyn Setters left; at 4:02 Setters came back in the same car and about 5:07 Minica came back in another car and drove out to the trash cans behind "Neil's Place" and unloaded three cases of $2\frac{4}{12}$ ounce cans of beer; that the trash cans were ten or twelve feet from the building known as "Neil's Place"; that on May 7, 1952, he found 39 twelve ounce cans of beer at "Neil's Place" and Evelyn Setters and Neil McClain were there; that on June 20, 1953, he found 22 pints of whiskey, 15 half pints of whiskey and 16 half pints of gin in the back of the building at "Neil's Place"; that "he had cut a hole in the floor where the planks would slide back and forth"; that McClain and Setters were there; that on another occasion he was there and found a half pint of whiskey on Jim Davis and a half pint on J. D. Thomas, one of the defendants. That he often passed "Neil's Place" at night and cars were coming and going all the time and this continued around 2:00 o'clock in the morning; that when he made the seizure at "Neil's Place" on June 20, 1953, McClain and Setters were the only people there. That while they were getting the liquor out of the trap door, Neil McClain said that was all.

Sheriff Masters of Brown County testified he had found alcoholic beverages at "Neil's Place" on several occasions; that the last time he found 50 "odd" bottles stashed in the back part of the building;

that he believed he found 15 pints of whiskey, or 16 pints of gin, and 22 pints of whiskey; that a floor plank had been arranged so you could slide it back and leave a place about five or six inches wide, the width of a regular floor plank; that Setters and McClain were the only persons present when he found the liquor. That he had seen the place open as late as 2:00 o'clock in the morning, with business going on; that he had searched "Neil's Place" many times between April 20, 1950 and June 20, 1953; that while "Neil's Place" was padlocked a key was used to open the lock and when he went to "Neil's Place" he found the door open; that "defendants" stayed in the trailer house right beside the building and a fence enclosed the area back of the building; that while the building was supposed to be padlocked, the Sheriff found on the inside front part of the building two cans of beer and 17 half pints of whiskey under a bench; that he had seen Neil McClain and Evelyn Setters at the trailer house; that while Charlie Moore was running the place, about October 17, 1953, that he and others started across the back of the premises and saw Charlie Moore go to a place near Neil's premises and get something in a bottle that looked like whiskey; that the Sheriff went to the same place and found several bottles in a sack; that he had picked whiskey up all around the place.

Mr. Ray testified that on October 17, 1953, he found liquor at "Neil's Place"; that he was there with Inspector Middleton and Sheriff Masters; that he saw Moore and Neil McClain there; that Moore went from the back door of the dance hall to the back of the property and under the fence, reached down and found some liquor and went back to the house; that Moore saw the officers and ran into the wires; that the officers went around and found the liquor, and at that time McClain came out of the west door; that the officers then found ten half pints of whiskey and three pints at the place they had seen Moore go when he went out of the dance hall.

Constable Pruitt testified that on November 27, 1951, he went to "Neil's Place" with other officers and helped take whiskey from a hole in the floor and from the back of the building, inside the dance hall, which was then supposed to be padlocked.

Appellant McClain testified that he had had a number of cases against him in the trial court; that he had an injunction case in April, 1951, that "Neil's Place" was padlocked about May 15th and remained locked until about June 21, 1952. He testified, in substance, that he had an agreement that by pleading guilty to several cases against him and Evelyn Setters that said matters would not thereafter be used against them for any purpose. But there was testimony that said agreement went no further than that the then County Attorney promised that he, personally, would not urge the District Court to hold McClain in contempt of court for violating the injunction against him if he pleaded guilty to the liquor charges then pending. This, at most, merely raised a fact issue for the determination of the trial court. McClain testified that he owned "Neil's Place" from 1947 to March 11, 1953; that alcoholic beverages were sold there; that he had pleaded guilty several times; that liquor was sold there several times and sales continued until he disposed of the property.

Charlie Moore, one of the defendants, testified that he operated "Neil's Place" four or five months; that about July 18, 1953, he sold whiskey there; that he "guessed" he had sold liquor at "Neil's Place" on other occasions.

Under the decisions in Winfield v. State, Tex.Civ.App., 231 S.W.2d 896; Tredway v. State, Tex.Civ.App., 189 S.W.2d 759 and State v. Crystal Club, Tex.Civ.App., 177 S.W.2d 110, it is evident that the testimony mentioned is sufficient to sustain the judgment. It is affirmed.